IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALEXIS ALPHA, | § | NO. 1:14-CV-1048-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF SAN MARCOS POLICE | § | |
| DEPARTMENT, and JAMES | § | |
| PALERMO, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant City of San Marcos Police Department's ("SMPD") Motion for Summary Judgment. (Dkt. # 22.) Pursuant to Local Rule 7(h), the Court finds this matter suitable for disposition without a hearing. After careful consideration of the memorandum in support of the motion, and the record in the case, the Court, for the reasons that follow, **GRANTS** the motion for summary judgment.

## BACKGROUND

In the early morning hours of May 29, 2013, Defendant James Palermo ("Palermo"), a former SMPD Corporal, made a traffic stop on a vehicle after observing it drive the wrong way on a one-way street. (Dkt. # 22-2 at 29.)

Palermo pulled the vehicle over in the parking lot of Rooftop on the Square ("the Rooftop"), a bar in downtown San Marcos, Texas.  (Id.)  Plaintiff Alpha Alexis ("Plaintiff") was a patron at the Rooftop the same night; as Plaintiff was exiting the bar, she walked between Palermo's patrol vehicle and the vehicle he had pulled over.  (Dkt. # 1-3 at 3.)  According to Plaintiff, the two vehicles were parked in a manner that prevented patrons from entering or leaving the Rooftop without walking between the two vehicles.  (Id.)

Thereafter, Plaintiff alleges that Palermo "accused of her of doing something wrong" and called out to her that she should have walked around the vehicles rather than between the vehicles.  (Id.)  Plaintiff contends that she did nothing wrong and had not made any contact with the vehicles, Palermo, or the driver of the other vehicle.  (Id.)  After an exchange of words in an argumentative manner, Palermo asked Plaintiff for her identification, which Plaintiff contends she was unable to immediately locate.  (Id.)  According to Plaintiff, she "then suggested that [Palermo] conduct his traffic stops in another location and indicated that he was simply in a bad mood and was acting like a dick."  (Id.)

Subsequent to Plaintiff's comments, Palermo told Plaintiff to "come here" and began to grab at her wrist.  (Dkt. # 22 at 2.)  Plaintiff backed away from Palermo and stated "you can't take me."  (Id. at 2–3.)  Palermo responded by grabbing Plaintiff, pushing her face and body down to the ground, and placing her

2

in handcuffs.  (Id. at 3.)  After dealing with the driver of the vehicle that Palermo had originally pulled over, Palermo then drove Plaintiff to a medical center for treatment for her injuries as a result of her arrest.  (Id.; Dkt. # 22-2 at 33.)

At the medical center, Plaintiff requested that her blood alcohol level be taken; the results indicated that her blood alcohol level was .17.  (Dkt. # 22 at 3; Dkt. # 22-3 at 37.)  Plaintiff was diagnosed with a tooth fracture, contusions, and was prescribed an antibiotic.  (Id.)  It was also requested that she follow up with an oral surgeon upon her release from police custody.  (Id.)  Plaintiff was then transported to the Hays County Jail and was charged with Public Intoxication, Obstruction, and Resisting Arrest.  (Id.)

The next day, May 30, 2013, the Chief of the SMPD, Howard Williams, received notice of Palermo's potential violations of the SMPD general orders regarding use of force, interview, stops and arrests, and code of conduct. (Dkt. # 22-2 at 39.)  The Assistant Chief of the SMPD, Chase Stapp,[1] had reviewed the in-car video on the same day as the incident and was concerned that Palermo might not have had reasonable suspicion to stop Plaintiff nor probable cause to arrest her, and that he may have used unreasonable force and poor judgment in his interaction with her.  (Dkt. # 22-2 at 39–40.)  The in-car video was also reviewed the same day as the incident by the Police Commander for the Administration

---

[1] Stapp is now the Chief of the SMPD.  (Dkt. # 22 at 3.)

Division, Robert Klett,[2] whose staff was responsible for conducting internal affairs investigations for the SMPD.  (Dkt. # 22 at 3.)  Commander Klett notified Assistant Chief Stapp that he would begin a full review of the case the following day.  (Id.)

The same day that he received notice of the incident, May 30, 2013, Police Chief Williams sent a memorandum to Commander Klett, formally assigning him to begin an administrative investigation into the use of force and arrest of Plaintiff.  (Dkt. # 22-2 at 42.)  After receiving the memorandum the next day, May 31, 2013, Commander Klett served notice on Palermo that an investigation was being initiated on June 1, 2013.  (Id. at 43.)  The investigation was an internal complaint investigation because neither Plaintiff nor any witness had made a complaint at that time.  (Id.)  Palermo was placed on administrative leave with pay during the investigation.  (Id. at 101.)  Subsequently, upon review of the incident and at the initiation and encouragement of the SMPD, the county prosecutor dropped all criminal charges filed against Plaintiff within one week after she was charged.  (Id. at 44–47.)

During Commander Klett's internal investigation, it came to his attention that Palermo may have been involved in a prior questionable use of force incident in March 2013.  (Id. at 100.)  Based on this incident, Commander Klett

---

[2] Klett is now the Assistant Chief of Operations for the SMPD.  (Dkt. # 22 at 3.)

amended his investigation to include the March 2013 incident and notified Palermo about his amendment.  (Id.)  According to SMPD, Palermo's use of force narrative concerning the incident did not mention that he forced a handcuffed prisoner to the ground nor that he was Tased thereafter; however, these actions were evident on the videotape of the incident.  (Id.)

According to SMPD, Palermo admitted during Commander Klett's investigation that the maneuver he used to take Plaintiff to the ground was not taught to him by the SMPD, and that he did not follow Taser protocol in the March 2013 incident.  (Dkt. # 22 at 4; Dkt. # 22-2 at 81.)  Upon completion of the investigation, Palermo was found to have violated several provisions of the SMPD Policies and Procedures Manual ("the Manual").  (Dkt. # 22-2 at 95–98.) Specifically, Palermo had (1) used unnecessary and excessive force against Plaintiff; (2) filed charges against her that were not supported by probable cause; (3) used poor judgment in handling Plaintiff; and (4) utilized his Taser in violation of the Manual during the March 2013 incident.  (Id.)  On August 23, 2013, Police Chief Williams placed Palermo on indefinite suspension, pending conclusion of the on-going criminal investigation and possible prosecution for his actions.  (Dkt. # 22-2 at 113.)

On November 6, 2013, Palermo was indicted for Aggravated Assault by a Public Servant in Hays County, Texas, as a result of a separate criminal

investigation into Palermo's actions by the Criminal Investigation Commander for the City of San Marcos Police Department, Penny Dunn.  (Id. at 124.)  Palermo was placed on temporary suspension without pay, pending disposition of the felony indictment.  (Id. at 122.)  On November 24, 2014, Palermo pled guilty to the charges and was sentenced to deferred adjudication on January 6, 2015.  (Id. at 125–127.)  His employment with SMPD was terminated and he surrendered his Texas peace officer license.  (Id.)

Prior to Palermo's termination, on June 9, 2014, Plaintiff filed suit against Palermo, SMPD, and Police Chief Williams, in the 22nd Judicial District of Hays County, Texas.  (Dkt. # 1-3.)  On November 20, 2014, Defendants SMPD and Police Chief Williams[3] timely removed the action to this Court.  (Dkt. # 1.)  Plaintiff's complaint alleges state law claims against Palermo for assault and false arrest, and a federal claim against SMPD for violation of her constitutional rights under 42 U.S.C. § 1983.  (Dkt. # 1-3.)  On October 30, 2015, SMPD filed the instant motion for summary judgment on Plaintiff's claim against it under § 1983.  Plaintiff did not file a response.

## LEGAL STANDARD

A movant is entitled to summary judgment upon showing that "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); see also

---

[3] On March 18, 2015, the action against Police Chief Williams was voluntarily dismissed.  (Dkt. # 12.)

Meadaa v. K.A.P. Enters., L.L.C., 756 F.3d 875, 880 (5th Cir. 2014).  A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence."  Tiblier v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for

summary judgment." <u>United States v. Renda Marine, Inc.</u>, 667 F.3d 651, 655 (5th Cir. 2012) (quoting <u>Brown v. City of Hous.</u>, 337 F.3d 539, 541 (5th Cir. 2003)).

ANALYSIS

SMPD moves for summary judgment on Plaintiff's claim against it under § 1983.  (Dkt. # 22.)  SMPD contends that Plaintiff has produced no evidence that there was a policy or practice of the City of San Marcos that was responsible for her alleged constitutional violation.  (<u>Id.</u>)  SMPD also asserts that Plaintiff has produced no evidence of deliberately indifferent or inadequate supervision or training.  (<u>Id.</u>)

I.     <u>Municipal Liability Under § 1983</u>

Municipalities and other local government units are among those "persons" to whom § 1983 applies.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).  However, municipalities may not be held responsible for the acts of their employees under a respondeat superior theory of liability.  <u>See</u> <u>Piotrowski v. City of Hous.</u>, 237 F.3d 567, 578 (5th Cir. 2001).  A plaintiff must allege facts showing that the municipality itself—not merely its employees—has violated the Constitution.  <u>Id.</u> ("[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability.").

8

Thus, to prevail in a § 1983 municipal liability claim, a plaintiff must prove three elements: (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Piotrowski, 237 F.3d at 578 (quoting Monell, 436 U.S. at 694). Only by satisfying these three elements can a plaintiff "distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." Id.

A.   Official Policy

SMPD has presented evidence that its official policymaker is the San Marcos City Council ("the City Council"). (Dkt. #22-5.) SMPD contends that Plaintiff has failed to identify any officially adopted policy or procedure enacted by the City Council that directly caused the violation alleged. (Dkt. # 22 at 11–12.) SMPD's contention is correct.

Official policy, which establishes municipal culpability, "can arise in various forms." Peterson v. City of Fort Worth, 588 F.3d 838, 847 (5th Cir. 2009). Official policy usually exists in the form of "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." James v. Harris Cnty., 577 F.3d 612, 617 (5th Cir. 2009) (quotations omitted). "A policy is official only 'when it results from the decision or

9

acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy.'" Id. (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)); see also Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) ("Knowledge on the part of a policymaker that a constitutional violation will most likely result from a given official custom or policy is a sine qua non of municipal liability under section 1983.").

In addition, if the policy at issue is not facially unconstitutional, a plaintiff must also show that it was adopted with deliberate indifference as to its known or obvious consequences. James, 577 F.3d at 617. Deliberate indifference, in this context, "is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." Id. at 617–18; Conner v. Travis Cnty., 209 F.3d 794, 796 (5th Cir. 2000)). The Fifth Circuit has emphasized that the moving-force and deliberate-indifference elements of municipal liability "must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" James, 577 F.3d at 618; see also Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998) (quoting Board of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 117 (1997)).

10

In this case, Plaintiff alleges the following bases for municipal liability in her complaint: (1) a custom or policy to inadequately or improperly investigate complaints of misconduct by SMPD officers, and acts of misconduct were instead tolerated by SMPD; and (2) a custom or policy of inadequately supervising and training SMPD officers, including failure to require appropriate in-service training or retraining of officers who were known to engage in police misconduct.  (Dkt. # 1-3 at 4–5.)

Plaintiff did not file a response to SMPD's summary judgment Motion.  Therefore, Plaintiff has failed to show any evidence to support a claim that an official policy of the City Council was the moving force behind the excessive force that violated her constitutional rights.  Furthermore, the Court's review of the record does not indicate that there is evidence of a written policy to support such a claim.

Neither is there sufficient evidence to support a claim that a pattern of SMPD conduct establishes that it or the City Council maintained an unwritten policy that permitted the use of excessive force.  Although there is evidence that Palermo was involved in two other instances of alleged excessive force, it does not establish a pattern that is "so common and well-settled as to constitute a custom that fairly represents municipal policy."  Peterson, 588 F.3d at 850 (quotation omitted).  First, Palermo was found not to have engaged in excessive force by a

11

federal district court in this district for an incident in 2012, despite receiving a

criminal conviction for the violation for which he was arrested.  (Dkt. # 22-3.)

This incident, therefore, is not evidence that Palermo had a history of violating

citizens' constitutional rights.  Second, the other incident involving excessive force

used by Palermo is the Taser incident in March 2013 that was simultaneously

investigated with Plaintiff's incident.  As is documented by SMPD's evidence, this

incident was discovered and Palermo was found to have violated SMPD's Taser

policy.  Because of SMPD's determination, the Court does not consider this

evidence of any policy or custom permitting the use of excessive force.

"A pattern requires sufficiently numerous prior incidents as opposed

to isolated instances."  Peterson, 588 F.3d at 581 (quotation omitted).  Palermo's

instances of alleged excessive force do not indicate, by themselves, that the City

Council maintained a policy of condoning excessive force.  See id.  In addition to

her failure to produce evidence in support of her claim, Plaintiff has "failed to

provide context that would show a pattern of establishing a municipal policy."  See

id.  Accordingly, the record does not "suggest a pattern so common and well-

settled as to constitute a custom that fairly represents municipal policy."  See id.

B.     Ratification of the Incident

To the extent Plaintiff's complaint alleges that SMPD is liable because Police Chief Williams or any other supervising officer ratified Palermo's conduct, this contention is also without merit.  To establish municipal liability on the basis of ratification, a plaintiff must demonstrate that "authorized policymakers approve[d] a subordinate's decision and the basis for it," thus resulting in the policymaker's approval or ratification of the decision.  City of St. Louis v. Praprotnik, 485 U.S. 112 (1988).

There is no evidence in the record to support any contention that the City Council, Police Chief Williams, or any supervising officer approved Palermo's conduct.  SMPD's evidence is clear that within one day of Plaintiff's arrest, SMPD had initiated its own internal affairs investigation into Palermo's conduct, without any outside complaints.  Furthermore, a criminal investigation was also initiated, resulting in Palermo's criminal conviction for the incident.  On this record, Plaintiff has no evidence to support a ratification claim under § 1983.

C.     Supervision and Training

Again, by not providing a response to the motion for summary judgment, Plaintiff has failed to produce any evidence in support of her claim that the City Council or SMPD was deliberately indifferent to the need for appropriate in-service training or retraining of officers who were known to engage in police

misconduct.  "The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement."  Peterson, 588 F.3d at 849.  The Fifth Circuit has held that "to hold a municipality liable for failure to train an officer, it must have been obvious that the highly predictable consequence of not training its officers was that they would apply force in such a way that the Fourth Amendment rights of citizens were at risk."  Id. (quotation omitted).

Plaintiff has not provided any evidence that the City Council nor SMPD were aware of any need for in-service training, or retraining, of certain officers who they knew engaged in police misconduct, and then failed to take the necessary steps to train these officers.  SMPD, on the other hand, has produced evidence that Palermo received extensive training on the use of force during his employment with the SMPD.  (See Dkt. # 22-2 at 128–36.)  Additionally, SMPD has provided evidence of the various training events it provided to officers regarding use of force and defensive tactics during Palermo's employment.  (Id. at 137–143.)  Accordingly, there is no evidentiary support in the record to support any theory of municipal liability based on a failure to train officers.

As for Plaintiff's claim that the City Council or SMPD was deliberately indifferent to the need to supervise its officers adequately, Plaintiff has

14

produced no evidence.  Again, for a municipal to be liable for a failure to supervise, "it at least must have been obvious that the highly predictable consequence of not supervising its officers was that they would apply force in such a way that the Fourth Amendment rights of citizens were at risk." Peterson, 588 F. 3d at 850 (quotation omitted).  SMPD has produced sufficient evidence in support of summary judgment that it took immediate and severe action upon learning of Palermo's potential violation of Plaintiff's constitutional rights.  Accordingly, no municipal liability can be imposed on a theory of failure to supervise officers.

II.     Supplemental Jurisdiction

Because there are no genuine disputes of material fact on any of Plaintiff's claims against SMPD, summary judgment is appropriate and the claims against SMPD are dismissed.  As such, only Plaintiff's state law claims against Palermo remain.

Courts may decline supplemental jurisdiction over remaining state law claims if no federal claims remain.  See 28 U.S.C. § 1367(c)(3).  However, when a district court loses subject matter jurisdiction, a remand is not necessarily automatic.  Brookshire Bros. Holding, Inc. v. Dayco Products, Inc., 554 F.3d 595, 602 (5th Cir. 2009).  Fifth Circuit courts must move with prudent discretion in determining whether to retain the remaining state law claims.  Id.  A court abuses its discretion if it declines supplemental jurisdiction and remands a case "after

15

investing a significant amount of judicial resources in the litigation." Id.

Accordingly, a court must then consider the remaining factors under § 1367(c) and

the "common law issues of judicial economy, convenience, fairness and comity as

applied to the case." Id. at 603.

In this case, the state law claims do not raise particularly novel or

complex issues of state law, see 28 U.S.C. § 1367(c)(1), and there do not appear to

be any compelling or significant reasons for declining jurisdiction apparent to the

Court at this time. See 28 U.S.C. § 1367(c)(4). Furthermore, although the case has

been pending in federal district court for less than a year and one-half, the case was

already set for trial just prior to its assignment to the undersigned on December 4,

2015. (See Dkt. # 24.) At this point, the Court finds it inconvenient and unfair to

the parties to decline supplemental jurisdiction; therefore, the case will not be

remanded.

CONCLUSION

Based on the foregoing, the Court **GRANTS** SMPD's Motion for

Summary Judgment (Dkt. # 22), and **DISMISSES WITH PREJUDICE** the

claims against SMPD.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, February 8, 2016.

_____
David Alan Ezra
Senior United States Distict Judge